UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CRIMINAL ACTION NO. . 19-CR-56- DCR

UNITED STATES OF AMERICA                                        PLAINTIFF,

V.       **SENTENCING MEMORANDUM**
         **OF DEFENDANT, RICHARD DERRINGER**

RICHARD DERRINGER                                               DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Comes now the Defendant herein, Richard Derringer (hereinafter "Derringer") by and through the undersigned counsel, and pursuant to Fed. R. Crim. P. 32(i)(3) and 18 U.S.C. §3553(a), and provides the Court relevant information to consider in determining a sentence that is not greater than necessary to achieve the goals of sentencing under §3553(a)(2).

**I. Nature and Circumstances of the Offense**
**A Procedural Background**

Derringer and his Co-Defendant, Jacquolyn Walls-Land were indicted in a five count Indictment (DKT#1) for the following offenses:

Count 1 Conspiracy to produce a visual depiction of a minor engaged in sexually explicit conduct;

Count 2 Aiding and Abetting production of a visual depiction involving a minor engaged in sexually explicit conduct.

Count 3 Distribution of visual depictions involving a minor engaged in sexually explicit conduct (Jacquolyn Walls-Land only).

Count 4 Possession of a matter containing visual depictions of a minor engaged ins sexually explicit conduct.

1

Count 5 Distribution of Methamphetamine. Subsequently, in a Superseding Indictment (DKT# 31), the United States dropped the distribution count against Walls-Land and placed the distribution count on Derringer. Derringer stood on his constitutional rights; maintained his not guilty plea; and went to trial. After a jury trial of three days, Derringer was convicted on counts 1, 2, 4, and 5. The jury entered a not guilty verdict on the distribution charge against Derringer.

B. <u>Statement of the Case</u>

Derringer agreed to accompany his then girlfriend, Jacquolyn Walls-Land on a sleepover/swimming/birthday party for Walls-Land's 11 year old daughter and her friends. According to Walls-Land, Derringer was not supposed to stay at the hotel during the sleepover/party (see paragraph 19 of the original PSR). It was never anticipated that Derringer would be a chaperone for any of the girls. For whatever reason, Derringer stayed at the hotel the entire duration of the sleepover/swimming/birthday party.

In the early morning hours of March 10, 2018, one of the 11 year old girls attending the sleepover, D.M. became homesick and wanted to go home. Derringer offered to drive her home and initially left the hotel to drive her to her mother's house. However, when Walls-Land could not reach D.M.'s mother who worked the third shift, Derringer and D.M. returned to the hotel to pick up Jacquolyn Walls-Land who had agreed to chaperone the sleepover. The three of them left the hotel together. Clearly, Walls-Land was acting in the role of chaperone at this point. During the drive, Derringer pulled over onto a country road where he sexually assaulted D.M. Jacquolyn Walls-Land, the chaperone in charge of D.M. did nothing to stop the sexual assault by Derringer. In fact, Walls-Land filmed the sexual assault of D.M. by Derringer. At the trial odf Derringer, walls-Land testified that she filmed the assault because she wanted proof of the sexual assault. During the subsequent investigation by law enforcement, 23 videos of Derringer sexually

assaulting D.M. were found on Walls-Land's cellphone. Also during the sexual assault, Derringer gave D.M. methamphetamine. He also partook in the use of methamphetamine. The use of the methamphetamine is clearly visible on the cellphone videos.

After the sexual assault, the three returned to the hotel. Walls-Land exited the van first. Approximately 20 minutes later Derringer and D.M. exited the van and entered the hotel. After eating breakfast, Derringer returned to his room while the girls went for a last swim under the supervision of Walls-Land[1]. It was during the swim time that Walls-Land manufactured a ruse, sending D.M. up to the hotel room while Derringer was in the shower. D.M. arrived at the hotel room and found Derringer exiting the shower with a towel around his waist. Derringer showed D.M. a text message on his cellphone that he had received from Walls-Land indicating that Walls-Land was sending D.M. to the room so he could f*** her. Walls-Land never mentioned this text message to the case agents or during her interviews with the case agents during her proffer or during her testimony at the trial.

### C. History and Characteristics of the Defendant

Derringer is a 47 year old white male. He was born to the marital union of Polly Ann Giles and Richard Anthony Derringer (deceased) in Lebanon, Kentucky. His parents were divorced when he was approximately three years old and he was reared by his father until his father's death. Derringer has four siblings (full and half). He reports that he has regular contact with three of his siblings but has had no contact with a brother who resides in Louisville.

He was married to Christina Michelle Derringer in 2003-2011. The marriage produced three children (ages 16, 11, and 10). The parents were divorced in 2011. The children have resided exclusively with their mother since Derringer's separation from Christina in 2010.. The state *CourtNet* record reflects that Derringer has a child support obligation to his ex-wife and that

---

[1] The Holiday Inn Express, like other hotels, requires an adult guest to supervise minors in the pool area.

he is in serious arrears.

Derringer reports that he has worked in the construction industry almost all of his adult life. He has been a contractor.

His first conviction was at the age of 20 in 1992 for passing cold checks. He had six misdemeanor convictions for cold checks from 1992 through 2004. He received his first felony conviction on a theft charge ( T But) in 2005.This scrivener suspects that the conviction was related to his construction job activities.

In 2005 Derringer received his first controlled substance misdemeanor conviction. This arose out of a traffic offense. He has had several other traffic infractions and other cold check misdemeanors. In 2009, while in the process of his divorce, he received a felony conviction for the following:

1. Harassing communications;

2. Receiving stolen property under $500;

3. Deception under $500 (fraudulent use of a credit card); and

4. Violation of a Kentucky DVO.

These are charges of concern but not unexpected in the realm of a contentious divorce. Additionally there were more misdemeanor theft charges and disorderly conduct charges as a result of the confrontations in stores. There was a misdemeanor drug charge (possession of methamphetamine) in Mercer County in 2017 (see paragraph 103 of the PSR). Derringer went to Lake Hills Oasis (a drug treatment facility) as a result of these charges. Records from Lake Hills Oasis were only received by the undersigned on November 19, 2019. These records reflect that he was in residential drug treatment from June 15, 2018 and that he was released on August 8, 2018 to attend a court hearing. He was arrested on the sex charges (state) on September 18, 2018.

There are no felony drug charges. However, clearly, Derringer has a drug problem. He admitted to heavy use of methamphetamine and heroin. More importantly, there are no prior sex or child porn related charges. In other words, the activity of the sexual assault on the victim D.M. would appear to be atypical of the conduct of Derringer as reported in the PSR. Nevertheless, Derringer's criminal history adds up to a category of VI. The undersigned would submit that Derringer's sexual assault of D.M. was perhaps fueled by his drug use on the morning of the assault (March 10th). Nothing in his prior criminal history would have tipped anyone off that he was inclined to such actions. Even should the court sustain all the objections of Derringer to the PSR, he still stands convicted on Count 5 of the Indictment- Distribution of methamphetamine, which he offered no defense, and for which he is an Adjusted Offense Level of 44$^2$. With a Criminal History Category of VI, his guideline range of imprisonment should the court sustain all of his objections, is life. The statutory maximum for a conviction of Count 5 (a violation of 21 USC § 841(a)(1) is not more than 20 years.

      This is a troubling case to the undersigned. Serious conduct occurred which harmed a little girl. The undersigned has been advised that D.M. has been in counseling since the sexual assault. However, in the undersigned's opinion, this is not a case that should have ever been prosecuted as a child porn case. It never really fit. It is not a typical child porn case which one usually sees. As far as distribution goes, and admittedly this is the acquitted conduct which the probation office seeks to enhance Derringer on, the allegations were from the outset that this was merely attempted distribution. The images were never actually distributed and as far as law enforcement can determine, never made it to the internet for dissemination to the masses. With respect to production (conspiracy or aiding and abetting), there is no indication that Derringer

---

$^2$ Pursuant to numerical paragraph 70 of the PSR, this is treated as a level 43 pursuant to Chapter 5, part A (comment in 2).

was even aware that the Co-Defendant was filming the sexual assault on her cellphone. Conceivably, he could have agreed after the fact, but there is not even any proof of that[3]. As far as production cases go, this is not even your typical factual scenario in a production case for a child porn prosecution. Production cases typically involve an adult who grooms a child or poses a child for filming. This did not happen in this case.

The possession charge is what it is. However, a mere possession charge of child porn typically receives a sentence of a few months (under 30).

### 2. The Kind of Sentences Available and the Kind of Sentence and Sentencing Range by the Guidelines

A. 18 USC § 3553(a)(2) Mandates the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense. This is a horrific sexual assault of an 11 year old girl by an adult male which was facilitated by the Co-Defendant chaperone which was prosecuted as a child pornography case in federal court. As child pornography cases go, it was not a typical child pornography case where an adult recruits and grooms a minor victim; poses a minor victim; or stages the filming of a minor victim; posts the images on the internet for mass dissemination. As child porn cases go, it was not that horrific. In other words, it is not your typical heartland child porn case. What gets Derringer in this case is the relevant conduct that is associated with his actions. Even if one believes that he did not know the Co-Defendant Walls-Land was filming the assault, his assault of the minor victim is a serious offense and merits a substantial penalty. Derringer is a 47 year old white male in only fair health (at best). Medical records from Lake Hills Oasis, a Christian Drug Rehabilitation Facility in Somerset, Kentucky were received on Monday, November 18,

---

[3] The undersigned does expect that the United States might put the Co-Defendant Walls-Land on the stand during Derringer's Sentencing Hearing to testify in accordance with the government's theory of the case, that there was a conspiracy to produce these child porn videos. However, her testimony should be very suspect at this time given her untruthfulness on prior occasions.

2019, reflect that he has struggled with opiate addiction; post-traumatic stress disorder as a result of being sexual abused by a step-mother as a child; and a myriad of other issues and ailments. He is subject to seizures because of a condition of light sensitivity to his eyes which necessitates him to wear tinted glasses all of the time, both indoors and outdoors. The likelihood of him surviving a lengthy sentence in prison are not good due to his poor health. Given the fact that Derringer is criminal history category of VI[4], the guideline sentencing range for Count 1, Count 2, is life. The statutory maximum for convictions on those counts is 360 months.

      Derringer offered no defense to Count 5 of the Indictment, the distribution of methamphetamine to the minor victim. He did not offer any defense and the undersigned literally invited the jury to return a verdict of guilty on Count 5[5], which the jury did. Derringer is clearly guilty of distribution of methamphetamine to a minor. Count 5 carries a statutory maximum of 20 years. This is the true conduct for which Derringer is guilty of in this federal prosecution and the related conduct under USSG 1b1.3. The Defendant submits that a sentence of 25 years would afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. The Defendant would be in his early 70s when he would be released from prison with such a sentence. There are a number of ways in which the Court could arrive at such a sentence. The undersigned would suggest the 20 year maximum under Count 5 consecutive with 60 months on the possession charge for which Derringer was convicted by the jury. Derringer submits that a 25 year sentence along the lines proposed would seem to be a fair sentence.

---

[4] Derringer has only 2 felony convictions on his record and is still a Criminal History Category of VI.
[5] This was even commented upon by the United States in its closing argument.

Respectfully submitted,

/s/ C. William Swinford, Jr.
C. WILLIAM SWINFORD, JR., ESQ.
271 West Short Street, Suite 505
Lexington, Kentucky 40507
Telephone: 859-233-1786
Facsimile: 859-231-0691

*Counsel for Defendant, Richard Derringer*

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2019, a true copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

s/C. William Swinford, Jr., Esq.
C. WILLIAM SWINFORD, JR., ESQ.