UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Case No. 5:19-56-DCR-CJS-1 |
| | ) | Civil Case No. 5:22-255-DCR-CJS |
| v. | ) | |
| | ) | |
| RICHARD DERRINGER, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Richard Derringer, proceeding *pro se*, has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (R. 157). The Government filed a Response (R. 162), and Derringer has filed a Reply.[1] (R. 168). Pursuant to local practice, this matter has been referred to the undersigned for the preparation of a Report and Recommendation under 28 U.S.C. § 636(b). For the reasons set forth below, it will be recommended that Derringer's § 2255 Motion be **denied**.

## I.  FACTUAL AND PROCEDURAL HISTORY

On August 16, 2019, Derringer was convicted by a jury and found guilty of one count of conspiracy to produce visual depictions involving a minor engaging in sexually explicit conduct using means of interstate commerce in violation of 18 U.S.C. § 2251(e); one count of aiding and abetting the production of visual depictions involving a minor engaged in sexually explicit conduct using means of interstate commerce in violation of 18 U.S.C. § 2251(a); one count of possession of matter containing visual depictions of minors engaged in sexually explicit conduct which matter had been transported in interstate commerce in violation of 18 U.S.C. § 2252(a)(4)(B); and one

---

[1]  Derringer was granted an extension due to extenuating circumstances at his facility. (*See* R. 165). He sought a further extension, citing the same conditions, which was granted. (R. 169).

count of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). (R. 63). He was sentenced to a total of 1200 months of imprisonment on December 12, 2019. (R. 120). He filed a direct appeal with the Sixth Circuit on December 13, 2019. (R. 121). The Sixth Circuit denied his appeal on February 3, 2021 (R. 147), and he petitioned for a rehearing en banc. (R. 149). The Sixth Circuit denied Derringer's request for rehearing and reissued their original denial of his appeal on May 24, 2021. (R. 150). Derringer did not file a petition for writ of certiorari with the Supreme Court.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a defendant must file a motion to vacate generally within one year from "the date on which the judgment of conviction becomes final[.]" 28 U.S.C. § 2255(f)(1). "[F]or federal criminal defendants who do not file a petition for certiorari with [the United States Supreme Court] on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires." *Clay v. United States,* 537 U.S. 522, 532 (2003). Ordinarily, Derringer would have had 90 days under Supreme Court Rule 13(1) to file a petition for certiorari with the Supreme Court after the May 24, 2021 denial of rehearing by the Sixth Circuit. However, in response to the COVID-19 Pandemic, the Supreme Court extended the deadline to file a petition for writ of certiorari from 90 days to 150 days for any relevant lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing that was issued prior to July 19, 2021. *See* Misc. Order, July 19, 2021, 594 U.S. ___ (2021). Derringer submits that because of this temporary rule change, he had 150 days after May 24, 2021 to file a petition for writ of certiorari with the United States Supreme Court. Because Derringer did not file a petition for writ of certiorari, his judgment thus became final 150 days after the denial of his petition for a rehearing en banc with the Sixth Circuit, or October 21, 2021. Derringer then had one year from that date, October 21, 2022, to file

his § 2255 Motion.  The Court received Derringer's § 2255 Motion on September 27, 2022.  The United States has not asserted untimeliness in its Response to Derringer's § 2255 Motion (R. 162).

Derringer raises five grounds of ineffective assistance of counsel in his § 2255 Motion: 1) his counsel was constitutionally deficient by failing to file a motion to dismiss his indictment for his co-defendant's "perjurious statements" in front of the grand jury; 2) his counsel was constitutionally deficient by failing to file a motion to suppress officer statements regarding evidence provided by his co-defendant; 3) his counsel was deficient by failing to file a motion to dismiss Counts 2, 3, and 4 of his indictment under the Double Jeopardy Clause; 4) his counsel was deficient by advising him that he could not enter a guilty plea on Counts 1 and 5 of his indictment and needed to proceed to trial on all counts; and 5) his counsel was constitutionally deficient by failing to properly question the prosecution's witnesses with respect to Count 5.  (R. 157).  In his Reply, Derringer adds a new claim for relief, arguing that the charges against him are unconstitutional because they do not comport with the Commerce Clause of the Constitution.  (R. 168 at Page ID 1551).  Accordingly, the Court considers Derringer's claims for relief herein.

## II.    ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may seek relief on grounds that: his conviction or sentence violated the Constitution or laws of the United States; the court lacked jurisdiction to impose the sentence; the sentence exceeded the maximum authorized by law; or the sentence is otherwise subject to collateral attack.  To succeed on a § 2255 motion alleging constitutional error, a federal prisoner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).  To obtain relief for a non-constitutional error, a federal prisoner "must establish a 'fundamental

defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). In sum, a federal prisoner must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A federal prisoner must prove his allegations by a preponderance of the evidence. *Id.* at 964.

When assessing an ineffective assistance of counsel claim, the Court must consider "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish he has been deprived of effective assistance, a defendant must show that counsel's performance was both constitutionally deficient and prejudicial. *Id.*

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms . . . considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. When assessing counsel's performance, the Court must make "every effort . . . to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id*.

4

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. With the preceding overarching standards in mind, each of Derringer's allegations are addressed below.

### A.    Ground One – Failure to Dismiss the Indictment

In Derringer's first ground for relief in his § 2255 Motion, he alleges that under *Kimmelman v. Morrison*, 477 U.S. 365 (1986), trial counsel was deficient for failing to file a motion to dismiss the indictment pursuant to *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988). (R. 157 at Page ID 1334). Derringer alleges that the FBI agent that presented his case to the grand jury used false testimony from his co-defendant, Jacquolyn Walls-Land, and his counsel was deficient for not making a motion to dismiss the Indictment on that basis. (*Id.*). Derringer argues that he was prejudiced by this failure because he either would not have been convicted or alternatively, his sentence would have been reduced. (*Id.*).

The United States counters that Walls-Land's testimony was not the only evidence presented during the grand jury proceedings, as the Government also presented cell phone video of the assault and surveillance footage from the hotel where the defendants were staying that evening to corroborate the testimony of Walls-Land. (R. 162 at Page ID 1371). The United States provided an affidavit from Derringer's counsel, Attorney William Swinford, stating that he had not seen a transcript or been otherwise informed of the grand jury testimony. (R. 162 at Page ID 1372). He theorizes that because Walls-Land did not initially cooperate with the Government,

Walls-Land's testimony would have been used in the grand jury presentation for the Superseding Indictment (R. 31), where the grand jury substituted Derringer for Walls-Land on Count 3, the charge for attempted distribution of visual depictions involving minors engaged in sexually explicit conduct using means of interstate commerce. (R. 162 at Page ID 1372). This was the one count that Derringer was acquitted on, and therefore, the United States argues this was not evidence of ineffective assistance of counsel, because Derringer suffered no prejudice. (*Id.*).

In Reply, Derringer counters that it is not his burden to provide evidence at this stage, citing to the general pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (R. 168 at Page ID 1538). He also includes an argument that the Due Process Protections Act of 2020 requires the Government to proffer evidence, and therefore the United States "<u>must</u> oblige and plead the reasons as to why Ms. Walls-Land was untruthful and the reasons it chose to accord falsities, lack of credibility, and truthfulness to her testimony . . . ." (*Id.* at Page ID 1541) (emphasis in original).

In these arguments, Derringer misunderstands the nature of a habeas proceeding. In a habeas proceeding where the petitioner is alleging ineffective assistance of counsel, the *petitioner* must prove his allegations by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003)). The pleading standards set by *Twombly* and *Iqbal* for civil actions are not applicable at this stage because Derringer filed a § 2255 Motion and not a civil complaint. Further, though he cites the Due Process Protections Act of 2020, the Act did not shift the burden of a petitioner in a habeas proceeding. Instead, the relevant portion of the Act amended the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 5(f). Pursuant to that amendment, at an initial appearance for a criminal defendant, the Court must issue an oral and written order confirming the prosecution's

6

disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  This Act has no effect on Derringer's § 2255 Motion, and it is up to him to show that he is entitled to relief at this stage.

Turning to the merits of Derringer's claim, grand jury indictments are generally presumed valid.  *United States v. Boettcher*, 164 F. Supp. 2d 925, 929 (E.D. Mich. 2001) (quoting United *States v. Overmyer*, 899 F.2d 457, 465 (6th Cir. 1990)).  Bare allegations of misconduct do not warrant dismissal of a presumptively valid grand jury indictment.  *See Overmyer*, 899 F.2d at 465. Derringer alleges that Agent Kidd testified that Walls-Land was "drug-free, innocent, and a reliable source of information" to bolster the allegations against him and secure the indictment. (R. 157 at Page ID 1334).  However, Derringer does not point to specific evidence supporting his allegations. *See Pough*, 442 F.3d at 964 (requiring petitioners prove allegations by a preponderance of the evidence).  As "proof" that Walls-Land provided unreliable testimony, Derringer speculates that the United States withdrew their motion to reduce Walls-Land's sentence for cooperating under United States Sentencing Guidelines (USSG) Section 5K1.1.  (R. 157 at Page ID 1334; R. 168 at Page ID 1541).  The United States refutes this assertion by stating that it did make such a motion, but the motion remains under seal, so Derringer does not have access to the document. (R. 162 at Page ID 1372).

Without any sufficient evidence that there were false statements made to the grand jury, Derringer cannot show that his counsel's failure to move to dismiss the indictment was deficient or prejudicial to him.  Attorney Swinford states that he was not made aware of any grand jury testimony in the early stages of the case, and assumes that this allegation is related to the Superseding Indictment regarding the attempted distribution of child pornography charge that Derringer was acquitted on.  (R. 162 at Page ID 1383).  In his Reply, Derringer does not clarify which proceeding he is referencing.  Additionally, the United States notes that evidence other than

Walls-Land's testimony implicated Derringer, including evidence from a cell phone containing videos of the assault and video surveillance that supported the timeline of events. (*Id.* at Page ID 1371). Weighing Attorney Swinford's actions against the highly deferential standard for deficient performance, it is not unreasonable that an attorney would not file a motion to dismiss an indictment when grand jury proceedings are presumptively valid and additional evidence implicated Derringer beyond his co-defendant's statements. This alone is enough to end the Court's inquiry. *United States v. DeGrave*, No. 6:17-cr-39-GFVT-CJS, 2020 WL 2739877 *2 (E.D. Ky. Apr. 30, 2020) ("Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry.").

However, assuming arguendo that Derringer could show that Attorney Swinford performed deficiently, he cannot show that this prejudiced him. As the United States and Attorney Swinford theorize, Walls-Land could only have testified at the grand jury that returned Derringer's Superseding Indictment, as she was not cooperating with the United States at the time of the initial Indictment. (R. 162 at Page ID 1372). And Derringer was acquitted of the only additional count charged in the Superseding Indictment. (R. 31). Derringer provides no argument or evidence in his Reply to counter this theory, instead arguing that the "government is arguing well we tried to use perjured testimony and false evidence, but since [he] was not convicted, there was no harm no foul. Whether such kind of callous and cavil attitude should be excused is for the Court to decide." (R. 168 at Page ID 1538). He goes on to state that he need not make any further showing than what the Government has, which as noted above, is not the standard for a § 2255 proceeding. Here, even if the Court concluded that Attorney Swinford had performed deficiently, Derringer has not demonstrated what prejudice he suffered as a result. He was acquitted on this count, and it had no impact on his sentencing.

In the section of his Reply dedicated to this ground, Derringer adjusts his argument to question the validity of the evidence used against him instead of addressing how his attorney was ineffective for failing to seek dismissal of the indictment. (R. 168 at Page ID 1539-40). On direct appeal, Derringer unsuccessfully challenged the sufficiency of the evidence against him. *See United States v. Derringer*, 844 F. App'x 802, 807 (6th Cir. 2021). It appears that Derringer is attempting to use this claim of ineffective assistance of counsel in his habeas petition to repackage his claim from his direct appeal, which is not permitted. *See Clemons v. United States*, No. 3:01-CV-496, 2005 WL 2416995, at *2 (E.D. Tenn. Sept. 30, 2005) ("Clemons cannot use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to him on direct appeal."). Because Derringer brought this claim alleging ineffective assistance of counsel (*see* R. 157 at Page ID 1334), the Court is limited to an analysis of whether his attorney's performance was deficient, and whether that deficiency prejudiced him. *See Strickland*, 466 U.S. at 686. Derringer has not made a sufficient showing on either prong; therefore, he is not entitled to relief on this ground.

###    B.    Ground Two – Failure to File a Motion to Suppress

Derringer's second ground for relief appears to allege that Attorney Swinford was ineffective for failing to file a Motion to Suppress the FBI agent's statements regarding the evidence obtained from Walls-Land. (R. 157 at Page ID 1334). Derringer argues that such a motion would have been successful in "quashing the arrest and suppressing any evidence derived" from Walls-Land, because the agent presenting the information to the state court for an arrest warrant withheld the fact that there was audio in the videos showing Walls-Land's participation in the explicit conduct, and the Government did not play the audio for the jury during trial to bolster

her credibility as a witness. (*Id.* at Page ID 1334-35). He believes that the recordings are strong enough evidence to render Walls-Land "a poisonous tree of unreliability." (*Id.* at Page ID 1335).

The United States argues that the warrants were issued before Walls-Land began cooperating with law enforcement and that her statements in the video were not used to develop probable cause for his arrest, thus a motion to suppress would have been improper. (R. 162 at Page ID 1373). Instead, law enforcement relied upon affidavits from the victim's mother who reported the abuse, the victim herself, and Walls-Land's father, in addition to videos of the abuse from Walls-Land's phone and surveillance from the hotel. (*See id.* at Page ID 1485-1508) (showing the state court search warrants with affidavits). The United States notes that Walls-Land initially denied the allegations and did not implicate Derringer in her initial contact with police, and that her statements were not relied upon to establish probable cause for the arrest. (*Id.* at Page ID 1374). With respect to her role at trial, the United States argues that it was made clear to the jury that Walls-Land filmed the videos, and text messages between her and Derringer were read to the jury inferring that she was aware of Derringer's intentions that evening. (*Id.*). She also admitted to the jury that she did not try to stop the abuse of the minor victim and admitted prior drug use. (*Id.*).

In his Reply, Derringer appears to adjust his argument to accuse the United States of tampering with the evidence by not playing the accompanying audio for the jury, and he argues that Attorney Swinford failed to move the Court to suppress the evidence at the grand jury stage and at trial. (R. 168 at Page ID 1543). He argues that this was "the biggest argument" between himself and trial counsel, and trial counsel should have contested the lack of audio because it would have "prove[d] the surreptitious nature of the recording and Walls-Land's efforts to compromise him." (*Id.* at Page ID 1543-44). He believes had the audio been played, Walls-Land's

testimony would not have been necessary, and it would have shown that he was not aware of the recording and thus, not guilty of conspiracy. (*Id.* at 1545-47). He also believes his counsel should have challenged the recordings before "concluding in [counsel's] mind that the conspiracy existed." (*Id.*).

It is not clear from his Reply exactly what evidence Derringer believes his attorney should have moved to suppress. His filings reference Agent Kidd's statements about Walls-Land (R. 157 at Page ID 1334); the videos on Walls-Land's phone (*see id*); and Walls-Land's statements to a grand jury and in the videos (R. 157 at Page ID 1534; R. 168 at Page ID 1543-44). He also includes allegations that the United States tampered with the recordings before it was played to the jury, and removed the audio. (R. 162 at Page ID 1543-44). As an initial matter, if Derringer is attempting to raise a ground of prosecutorial misconduct with respect to the video audio in his Reply, he is not permitted to do so. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (citing *Am. Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004) (holding that raising an argument for the first time in a reply filing is improper and the new argument can be rejected on that basis alone); see also *United States v. McCorkle*, No. 1:07-cr-288, 2010 WL 2131907, at *7 (W.D. Mich. Mar. 30, 2010) (collecting cases holding same); *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004) (holding same).

Next, it is difficult to discern from Derringer's filings what evidence he believes that his attorney should have moved to suppress before trial. Generally, a party is required to adequately develop the factual bases for his claims. The requirement to adequately develop his claims applies even though Derringer is *pro se*, as the Court "should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The Court cannot fill the factual and legal gaps in a party's motion because "it is not for the court to search the record and construct

arguments. Parties must do that for themselves." *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017). Rather than guess what grounds Derringer actually meant to raise based on the statements in his Reply filing, the Court will proceed with an analysis of whether his attorney was ineffective for failing to file a motion to suppress Walls-Land's statements in the videos, Walls-Land's statements to the grand jury, her statements at trial, and her statements with respect to the initial arrest warrant.

A motion must be "plainly meritorious" to successfully allege ineffectiveness for failing to move to suppress. *Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986)). For such a failure to constitute deficient performance, the meritorious nature of the motion must be so plain that "no competent attorney would think a motion to suppress would have failed." *Premo v. Moore*, 562 U.S. 115, 124 (2011). For the following reasons, a motion to suppress would not be plainly meritorious, and Derringer cannot show that his counsel was ineffective for failing to seek to do so.

With respect to the statements made by Walls-Land in the videos, it is not clear how Derringer believes his attorney should have proceeded. There is no evidence in the record that the search warrant of Walls-Land's phone was improperly obtained or that the evidence obtained from the phone should otherwise be suppressed. Derringer does not challenge the validity of the warrant at any point in his § 2255 Motion. As the United States notes, law enforcement relied upon affidavits from the victim's mother who reported the abuse, the victim herself, and Walls-Land's father, in addition to videos of the abuse from Walls-Land's phone and surveillance from the hotel. (*See* R. 162 at Page ID 1485-1508) (showing the state court search warrants with affidavits). Thus, more than the video evidence implicated Derringer, and a motion to suppress would not have been "plainly meritorious." *Hendrix*, 893 F.3d at 922. To the extent Derringer believes Attorney

Swinford should have raised more objections during the admission and questioning of this evidence, that is more appropriately covered below by the discussion of his fifth ground that Attorney Swinford did not subject the prosecution to meaningful adversarial testing.

Attorney Swinford theorizes in his affidavit that Derringer was referring to Walls-Land's statements put before the grand jury that returned the Superseding Indictment, rather than her statements in the video. (R. 162 at Page ID 1383-84). As the United States notes, Walls-Land was not cooperating with the United States when the warrants were issued, so a motion to suppress her statements before the grand jury on Derringer's superseding indictment would have no impact on the evidence obtained when the initial warrants were executed. Furthermore, Derringer was acquitted on that count and cannot demonstrate that the failure to move to suppress those statements resulted in prejudice. *See Strickland*, 466 U.S. at 691 ("[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

If Derringer was instead referencing Walls-Land's testimony at trial, a motion to suppress would not be a proper avenue to exclude that evidence. *See* Federal Rules of Criminal Procedure 12(b)(3) (categorizing a motion to suppress as a motion that must be made *before trial*) (emphasis added). And if Derringer is alleging that the state court relied on Walls-Land's statements to issue the initial arrest warrant, the United States notes that Walls-Land initially denied the allegations and did not implicate Derringer in her initial contact with police, and that her statements were not relied upon to establish probable cause for the arrest. (R. 162 at Page ID 1374).

Derringer has failed to show what evidence his attorney should have moved to suppress, and even based on the Court's best guesses, a motion would not have been meritorious; thus, his counsel could not have performed deficiently under these circumstances. Because Derringer has

13

not demonstrated that Attorney Swinford performed deficiently, he cannot show that he received ineffective assistance of counsel, and he is not entitled to relief on this ground.  *See DeGrave*, 2020 WL 2739877, at \*2 ("Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry.").

### C.    Ground Three – Failure to File a Motion to Dismiss for Double Jeopardy

In Derringer's third ground for habeas relief, he states that counsel was ineffective for failing to file a motion to dismiss Counts 2, 3, and 4 of his Superseding Indictment under the Fifth Amendment's Double Jeopardy Clause for multiplicity as interpreted by *United States v. Ehle*, 640 F.3d 689, 696 (6th Cir. 2011).  (R. 157 at Page ID 1335).  Derringer argues that such a motion would have been successful on the merits because each count involved the same offense conduct with the same elements as Count 1, and he was prejudiced because he "would have received at least 50 years less imprisonment had counsel moved to dismiss counts 2 and 4."  (*Id.*).  In other words, Derringer argues that his convictions for aiding and abetting the production of child pornography and possession of child pornography are multiplicitous of his conviction for conspiring to produce child pornography.  The United States argues that each offense contains different elements and therefore cannot be violations of the Double Jeopardy Clause.  (R. 162 at Page ID 1375-76).

The Double Jeopardy Clause of the Fifth Amendment provides that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."  U.S. Const. amend. V.  In support of his ground, Derringer points to *United States v. Ehle*, where the Sixth Circuit found that punishments for "knowingly receiving" child pornography and "knowingly possessing" child pornography violated the Double Jeopardy Clause because each statute in which the defendant was charged proscribed the same offense, and the possessing provision did not require

proof of any fact that the receiving provision did not. *Ehle*, 640 F.3d at 694-95. Derringer's case is distinguishable from *Ehle* because each count he was convicted of contains different elements from the other.

On Count 1, Derringer was convicted of conspiracy to produce child pornography under 18 U.S.C. § 2551(e). A conspiracy requires an agreement to violate the law, which the jury found present between Derringer and Walls-Land. *See United States v. Frazier*, 880 F.2d 878, 884 (6th Cir. 1989); (R. 63). On Count 2, Derringer was convicted of aiding and abetting the production of child pornography under 18 U.S.C. § 2552(a), which does not require an agreement, but instead requires 1) an act by the defendant that contributes to the crime and 2) an intention to aid in the commission of a crime. *See United States v. Townes*, 512 F.2d 1057 (6th Cir. 1975). Thus, Count 1 and Count 2 contain different elements from the other, and are not multiplicitous. Because Derringer was acquitted on Count 3, it could not have prejudiced him, so it will not be considered in this analysis.

On Count 4, Derringer was convicted of possession of matter containing child pornography under 18 U.S.C. § 2552(a)(4)(B). The United States points to *United States v. Kniffley* in support of its argument that Count 4 is not multiplicitous of Derringer's conviction for Count 1. 729 F. App'x 406, 411 (6th Cir. 2018). In *Kniffley*, the court held that the production of child pornography under § 2551 requires proof that the defendant used a minor to produce child pornography, whereas the possession and distribution requirements do not. *Id.* There, the court found that because each statute requires proof of a fact that the other does not, double jeopardy did not apply. *Id.* So is the case here. While Derringer argues that Counts 1 and 4 are multiplicitous, *Kniffley* holds that production of child pornography (or in this case, conspiracy to do so) does not contain the same elements as possession. *Id.*

15

Derringer has not made a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" because Attorney Swinson failed to raise a losing argument. *See Strickland*, 466 U.S. at 686. Attorney Swinford's representation did not "[fall] below an objective standard of reasonableness" by failing to raise a Double Jeopardy argument when none applied to his case; therefore, his performance was not deficient. *Id*. at 688. Further, Derringer was not prejudiced by Attorney Swinford's failure to raise the Double Jeopardy argument, because even if it had been raised, it was without merit. Thus, Derringer is not entitled to relief on this ground.

### D.    Ground Four – Failure to Properly Advise Regarding a Guilty Plea

In Derringer's fourth claim for relief, he alleges that his counsel was ineffective by advising him that he could not enter a guilty plea for Count 1 (conspiracy to produce child pornography) and Count 5 (possession of methamphetamine), and that Derringer needed to proceed to trial on all five counts to preserve his innocence as to Count 3 (distribution of child pornography) that he was eventually acquitted on. (R. 157 at Page ID 1335). Derringer states that this prejudiced him because he was deprived of an opportunity to negotiate a plea agreement for Counts 1 and 5,[2] or in the alternative, he would have received a reduced sentence of 180-240 months on Counts 1, 2, 4, and 5 to be served concurrently. (*Id.*).

The United States counters Derringer's claims with Attorney Swinson's Affidavit, where he states that Derringer's claims are "blatantly untrue" and that he "never advised Derringer of any such thing." (R. 162 at Page ID 1384). Swinson states in his affidavit that Derringer was offered a plea agreement where if he had pleaded to the conspiracy charge in Count 1, the remaining

---

[2] Derringer leaves out Counts 2 and 4 with a notation stating, "assuming Counts 2 and 4 were dismissed for multiplicity." As noted in the above discussion regarding Derringer's third ground for relief, he was not entitled to dismissal of those counts.

charges would have been dismissed. (*Id.*). Swinford includes a letter sent to Derringer on April 1, 2019, advising him of the possibility of a plea agreement and describing the impact that the plea agreement would have on his sentencing. (R. 162 at Page ID 1388). This letter also contains relevant statutes, sentencing guidelines, and a sentencing table. (*Id.*). On April 20, 2019, Swinford sent another letter to Derringer with the text of the Plea Agreement tendered by the United States. (R. 162 at Page ID 1423). In both letters, Swinford advised Derringer of the applicable sentencing guideline enhancements and indicated that by his estimation, he could receive 360 months to life if he accepted the plea agreement, versus the guidelines recommended alternative of "simply life" with his additional enhancements. (*Id.* at Page ID 1389). Nowhere in these communications does Swinford tell Derringer that he could not enter into a plea agreement with respect to Counts 1 or 5, or that he could receive a reduced sentence of 180-240 months. Swinford does note in the April 20 letter that if Derringer pleaded guilty to Count 1 and the other charges were dismissed, a statutory maximum of 360 months would apply. (*Id.*). Because Derringer did not accept the plea offer from the United States, he was ultimately sentenced to 360 months of imprisonment for Count 1, 360 months of imprisonment for Count 2, 240 months of imprisonment for Count 4, and 240 months of imprisonment for Count 5, to run consecutively for a total of 1200 months. (R. 120 at Page ID 492).

Defendants have the right to effective counsel during pretrial proceedings, including plea negotiations, as recognized by the Supreme Court in *Missouri v. Frye*, 566 U.S. 134, 140 (2012). "If a plea bargain is offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 162-68 (2012). "[A] counsel's erroneous advice to reject a plea offer can establish ineffective assistance, so long as the criminal defendant can satisfy *Strickland*." *Logan v. United States*, 910 F.3d 864, 868 (6th Cir. 2018) (citing

17

*Lafler*, 566 U.S. at 172-74). In such a circumstance where it is alleged that ineffective advice led to a plea offer's rejection, to establish prejudice a defendant must show:

> That but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164.

Derringer cannot make this showing. First, he provides no evidence beyond his own assertions that Attorney Swinford advised him that he could not enter into a plea agreement, or that his potential sentencing could have been 180-240 months. Second, the communications included by Attorney Swinford show the opposite – that Attorney Swinford clearly and diligently communicated to Derringer the benefits of pleading guilty and what his potential sentencing would be in either case. In fact, Attorney Swinford predicted Derringer's sentencing exposure with almost perfect accuracy. In Attorney Swinford's letter to Derringer on April 1, 2019, he estimated that Derringer could receive a total offense level of at least 40 and a criminal history category of VI. (R. 162 at Page ID 1389). In the Pre-Sentencing Investigation Report ("PSR"), Derringer received a total offense level of 43 and a criminal history category of VI. (R. 123). Additionally, when Derringer rejected the original plea offer from the United States, Swinford stated that he continued to negotiate with the United States for a binding plea agreement, and the possibility of a plea agreement similar to the original remained on the table until shortly before trial. (R. 162 at Page ID 1384-85). Based on the lack of evidence from Derringer and the thoroughly detailed showing of the actions Attorney Swinford took to advise him of the risks of proceeding to trial, he has not made a specific showing that his counsel was deficient in advising him regarding his plea options.

18

Even assuming that Derringer could show that Attorney Swinford performed deficiently, he cannot show that this prejudiced him. To the extent Derringer's arguments suggest that effective counsel would have negotiated a better bargain with the United States or achieved a better sentencing result from the Court, this fails to satisfy the prejudice prong of *Strickland* as interpreted by *Hill*. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985). Where "the petitioner's claim of prejudice rests upon an assertion that he wound up with a less favorable plea or sentence than he otherwise would have accepted with the advice of competent counsel," such a claim "is insufficient to establish actual prejudice." *Short v. United States*, 471 F.3d 686, 696-97 (6th Cir. 2006) (citing *Hill*, 474 U.S. at 59). As noted in its Response, the Government was not willing to provide Derringer with a binding plea agreement, and thus the only offer on the table for him to accept was pleading guilty to Count 1 and facing up to 360 months of imprisonment. (*See* R. 162 at Page ID 1384-85). He argues that his counsel was ineffective for failing to negotiate with the United States, but there is no evidence that the United States would have made a different offer, or that there was more Attorney Swinford could have done to solicit one. Thus, Derringer is not entitled to relief on this ground.

### E.  Ground Five – Failure to Subject the Government's Case-in-Chief to Meaningful Adversarial Testing

In Derringer's final claim for habeas relief, he asserts that his counsel was deficient by failing to subject the United States' case-in-chief to meaningful adversarial testing with respect to Count 5, possession with intent to distribute methamphetamine. (R. 157 at Page ID 1336). Specifically, Derringer asserts that "counsel failed to pursue a line of questioning that would have shown Walls-Land had dominion and control over the methamphetamine in question." (*Id.*). Derringer cites to *United States v. Chronic*, 466 U.S. 648, 659 (1984) and *Phillips v. White*, 851 F.3d 567, 580 (6th Cir. 2017) in support of the proposition that a court presumes *Strickland*

19

prejudice when counsel fails to subject the government's case to meaningful adversarial testing at a critical stage of the proceeding. Derringer states questioning Walls-Land about her supposed control over the methamphetamine would have succeeded on the merits because impeachment in this fashion is permissible under the Federal Rules of Evidence 608(b) and 613, and his counsel could have used Walls-Land's previous statements to law enforcement to impeach her. (*Id.*). Derringer believes that if his counsel had properly cross-examined Walls-Land as to this issue, he would likely have been acquitted on Count 5 and received a reduced sentence. (*Id.*).

The United States counters that during trial, the United States questioned Walls-Land about her methamphetamine use and she testified that she did not know where Derringer got the methamphetamine, that she did not provide it to him, and that she did not ingest any. (R. 141 at Page ID 994). In Attorney Swinford's affidavit, he notes that he conceded Count 5 because "Derringer was clearly visible on the video played to the jury lighting and smoking a methamphetamine pipe and handing it to Land and placing the pipe in the mouth of the juvenile." (R. 162 at Page ID 1385). The United States argues that the video evidence was sufficient to sustain his conviction, because under *United States v. Merriweather*, 728 F. App'x 498 (6th Cir. 2018), the government only needed to prove that the defendant 1) knowingly or intentionally distributed controlled substances; and 2) at the time of such distribution, he knew that the substance was a controlled substance. *Id.* at 510.

In *Chronic*, the Supreme Court held that an automatic presumption of prejudice under *Strickland* applies when counsel fails to subject the prosecution's case to "meaningful adversarial testing." 466 U.S. at 659-60. The Sixth Circuit has found automatic prejudice in circumstances where the attorney did not have adequate time to prepare for trial, or did not communicate appropriately with the client. *See Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003) (finding a

presumption of prejudice when counsel only met with defendant for six minutes of six months of representation, when counsel was suspended from practice a month before trial, did not appear at hearings or do any other work on the case); *Hunt v. Mitchell*, 261 F.3d 575, 582-83 (6th Cir. 2001) (finding a presumption of prejudice when the appointment of the attorney and the trial were a day apart). If an automatic presumption of prejudice does not apply, the Court defaults to the two-pronged *Strickland* analysis to establish that counsel was deficient and there was prejudice. *See Clark v. Lindsey*, 936 F.3d 467, 471 (6th Cir. 2019).

Here, the record does not support that Attorney Swinford failed to subject counsel to meaningful adversarial testing in such a manner that an automatic prejudice would apply. In reviewing the transcripts in the record, Swinford fully participated in the direct and cross-examination of Walls-Land. (*See* R. 141, R. 142). During the direct examination, Swinford raised meaningful objections and raised questions to clarify the record. (R. 141 at Page ID 959, 998; R. 142 at Page ID 1013, 1018, 1023, 1033, 1035, 1040). Swinford also performed a lengthy cross-examination and re-cross examination of Walls-Land. (R. 142 at Page ID 1051-81).

The Court does recognize that with respect to the methamphetamine charge, Swinford's cross-examination was not as lengthy. The exchange between Swinford and Walls-Land is as follows:

Q:     In March of 2018, before this event, did you have custody of your children?

A:     Yes, sir.

Q:     You didn't have a drug issue where the children were taken away?

A:     No, sir.

Q:     Do you smoke meth at all?

A:     No, sir.

> Q:    All right.  And did [former roommate], wasn't she arrested immediately upon leaving your residence in January of 2018, right outside your address and charged with trafficking in meth?
>
> A:     I don't know.
>
> Q:    You don't know that she has a trial coming up in Boyle Circuit Court next month?
>
> A:    I don't know.

(R. 142 at Page ID 1066-67).  While Swinford could have challenged Walls-Land's statements further, the weight of the evidence against Derringer on this count included video footage.  As the presiding District Judge noted during the defense presentation, "[t]he distribution of methamphetamine charge is not seriously contested, and the videotaping of the smoking by Derringer was sufficient because he was using that -- showed that too on the phone."  (*Id.* at Page ID 1092-93).  Swinford did lodge objections during the presentation of the video, challenging the relevance of the video, visibility of the activity, and leading of the witness by the prosecution.  (R. 141 at Page ID 99-1000; R. 142 at Page ID 1013, 1040).

Given the number of Swinford's objections and depth of the cross-examination, his participation was not so slight that the automatic prejudice of *Chronic* should apply.  Therefore, his actions are subject to a *Strickland* analysis, which as noted above, is highly deferential to the attorney with a strong presumption that the attorney's conduct falls within the wide range of reasonable professional assistance.  *See Strickland*, 466 U.S. at 689.  It would be reasonable for Swinford to focus his efforts on the other charges in Derringer's indictments, due to the strength of the evidence against Derringer on the methamphetamine count.  *See Harrington v. Richter*, 562 U.S. 86, 109 (2011) ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect.").  And while it is possible that Swinford could have more effectively cross-examined Walls-Land, that is not the standard

that Swinford is held to in evaluating whether his performance was deficient. *See Strickland,* 466 U.S. at 694.

Additionally, even if Swinford's actions rose to the level of deficient performance, Derringer cannot show by a preponderance of the evidence that he was prejudiced. He states in his Motion that had Walls-Land been effectively cross-examined, the jury would have acquitted him. (R. 157 at Page ID 1336). Derringer fails to account for the weight of evidence against him on this particular charge, which included video of him smoking methamphetamine out of a pipe and blowing it in the victim's face. (*See* R. 141 at Page ID 997-98). Further, Swinford raised an objection to the introduction of that video and was unsuccessful. (*Id.* at Page 999-1000). Failing to prevail when making a debatable argument to the Court does not constitute ineffective assistance of counsel. *See Hodge v. Haeberlin*, 579 F.3d 627, 644 (6th Cir. 2009). For these reasons, Derringer cannot meet either prong of the *Strickland* analysis on this ground for habeas relief.

## F.   Constitutionality of the Distribution Charge

In his Reply, Derringer adds an additional argument that his conviction for Count 1 in violation of § 2251(e) is unconstitutional because the conduct does not fall within the activities Congress is permitted to regulate under the Commerce Clause of the Constitution. (R. 168 at Page ID 1551). He argues that although the claim was not included in his initial pleading, because the issue is jurisdictional in nature, it can be raised at any time. (*Id.*) (citing to *Gonzales v. Thaler*, 565 U.S. 134 (2012)).

As noted above, raising an argument for the first time in a reply filing is improper and the new argument can be rejected on this basis alone. *See Sanborn*, 629 F.3d at 579 (citing *Am. Trim, LLC*, 383 F.3d at 477); *see also McCorkle*, 2010 WL 2131907, at *7 (collecting cases); *Burns*, 328 F. Supp. 2d at 724. Moreover, *Gonzales* does not stand for the proposition that a petitioner can

avoid including an argument in his original petition by posing it as a jurisdictional question. In *Gonzales*, the Supreme Court held that 28 U.S.C. § 2253(c), the statute that requires a certificate of appealability (COA) to indicate which specific issue satisfies AEDPA's requirement that a petitioner make a substantial showing of the denial of a constitutional right, is not jurisdictional. 565 U.S. at 148. In other words, even though a district court did not specifically identify what issue satisfied AEDPA's requirements for the COA, the court of appeals still had jurisdiction over that appeal. *Id.* Thus, the case does not support Derringer's proposition that he can raise a constitutional argument at any time.

Furthermore, if Derringer believed the statute under which he was validly convicted was unconstitutional, that argument should have been raised on direct appeal and is now procedurally defaulted. Generally, a § 2255 motion "is not a substitute for direct appeal." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)). Except for claims of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default, or waiver, of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998).

Finally, Derringer does not point to any evidence that a court has found 18 U.S.C. § 2251(e) unconstitutional or otherwise invalid since his conviction. In fact, the Supreme Court has expressly vacated an order from the only court that has adopted a similar theory regarding this statute and the Commerce Clause, meaning the Supreme Court has considered Derringer's position and does not agree that § 2251(e) is in violation of the Commerce Clause. *See United States v. Matthews*, 546 U.S. 1073 (2005) (vacating judgment in light of *Gonzales v. Raich*, 545 U.S. 1 (2005)). While a petitioner may seek habeas relief for new developments in the law that render their original charges unconstitutional, *see* 28 U.S.C. § 2244(d)(1)(C), that is not the case here.

24

## III.    CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255).  Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* at 484.  In this case, reasonable jurists would not debate the denial of Derringer's § 2255 Motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Accordingly, it is also recommended that a certificate of appealability be denied upon the entry of a final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons stated above, **IT IS RECOMMENDED** that:

1)    Derringer's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 157) **be denied;**

2)    a Certificate of Appealability **be denied** in conjunction with the entry of a final order in this matter;

3)    a Judgment in favor of the United States **be entered** in Derringer's ancillary action dismissing his claims and striking the ancillary action from the active docket of the Court.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in a waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 30th day of November, 2023.



**Signed By:**

*__Candace J. Smith__*

**United States Magistrate Judge**

J:\DATA\habeas petitions\2255 R&R general\19-56 DCR Derringer R&R.docx